# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

**DANNY RAY MEEKS**, #116192          )
                                                              )
Plaintiff,                                                  )
                                                              )
                                                              )
v.                                                            )          No. 1-07-cv-0013
                                                              )          Judge Haynes/Bryant
                                                              )
**TENNESSEE DEPARTMENT**          )
**OF CORRECTION,** et. al.,                  )
                                                              )
Defendant,                                               )


To:    The Honorable William J. Haynes, District Judge


## REPORT AND RECOMMENDATION

### I. Introduction

Currently before the Court is this pro se prisoner civil action filed by Plaintiff, Danny

Ray Meeks ("Meeks"), alleging constitutional violations and seeking relief under 42 U.S.C. §

1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  This Court

dismissed the action (Docket Entry No. 63), and on appeal, this Court's ruling was affirmed in

part and remanded in part by the Sixth Circuit Court of Appeals.  (Docket Entry No. 84)  The

Sixth Circuit affirmed this Court's dismissal of the Plaintiff's 42 U.S.C. § 1983 claims, but

remanded the case for consideration of whether the Plaintiff is entitled to injunctive relief under

Title II of the ADA as a result of being excluded from any program or denied any benefits as a

result of his disability.  *Id.*  Defendant has filed a motion for summary judgment, which is

currently pending.  (Docket Entry No. 123 )  Upon consideration of these papers and for the

1

reasons given below, the undersigned recommends that Defendant's motion for summary

judgment be GRANTED in part and DENIED in part.

## II. Statement of the Case.

On appeal, the Sixth Circuit summarized Plaintiff's claims under Title II of the ADA

against the Tennessee Department of Corrections (TDOC) as follows:

> Meeks, however, alleged that the TDOC discriminated against him by denying
> him lower security classification, the right to work as a legal clerk, participation
> in the Arts & Crafts program, visitation, and the ability to purchase packages as a
> result of his disciplinary convictions and continues to do so. He asked for
> injunctive relief.

(Docket Entry No. 84 at 3)

The Sixth Circuit remanded the case to this Court to consider the issue of "whether

Meeks is entitled to an injunction under Title II of the ADA." *Id.* At a pretrial

conference in December 2009, the plaintiff informed the Court by telephone that

although he was no longer seeking relief concerning his visitation rights, ability to

purchase packages, or participation in the Arts and Crafts program, he was still pursuing

his claims for relief concerning his employment as an inmate legal clerk and his prison

security classification. (Docket Entry No. 144 at 4) The Plaintiff stated that he also

seeks an injunction to prevent TDOC from continuing to enforce internal policies that

prohibit Plaintiff from obtaining an official diagnosis from prison medical staff

recommending the use of a "dry room" during drug testing. *Id.* Defendants and Plaintiff

agree that Plaintiff has not applied to work as an inmate law clerk and that Plaintiff's

security classification has not changed. (Docket Entry No. 126 at 2, 4) As a result,

Defendants argue that Plaintiff's request for injunctive relief as to his prison employment

2

eligibility and security classification is moot. (Docket Entry No. 124 at 4) Defendants have not addressed Plaintiff's claim that the TDOC's policy prohibiting prison medical staff from diagnosing medical conditions related to inmate drug testing violates the ADA. (Docket Entry No. 130 at 9)

### III. Undisputed Facts

At all times pertinent to this lawsuit, Plaintiff was incarcerated by the TDOC in various prison facilities. (Document No. 1) TDOC facilities administer mandatory, random drug screenings of all inmates by urinalysis. Plaintiff claims he is unable to give a urine sample as a result of paruresis, a social disorder which makes it very difficult for Plaintiff to urinate in the presence of others. (Docket Entry No. 134 at 12) Plaintiff was informed that alternative drug testing measures would not be made available to him unless he could get an "Avoid Verbal Order"("AVO") document from the prison medical staff stating that he is unable to provide a urine sample due to a medical condition. (Docket Entry No. 1-1 at 10).[1] However, in accordance with an internal prison medical staff memorandum dated August 1, 2002 implementing the instructions of TDOC's Director of Substance Abuse Programs, medical staff are forbidden from "get[ting] involved in any manner with the collection of specimen's (sic) (urine) or the testing of specimen's (sic) for the purposes of security drug testing." (Docket Entry No. 1-1 at 18) Plaintiff was thus unable to procure an AVO and was convicted of a disciplinary charge for refusing drug screening on September 17, 2005 and again on August 21, 2006.

---

[1]Prison medical staff issue AVO's to inmates who have a medical reason to avoid a verbal order from a prison official.

3

(Document No. 126 at 2)  On August 29, 2006 after his second disciplinary conviction,

Plaintiff was finally able to procure an AVO from a medical doctor.  The AVO stated as

follows: "Mr. Meeks has paruresis.  He can give urine sample however, it may take

several hours.  TDOC policy #506.21 will allow dry celling for urine collection."

(Docket Entry No. 1-1 at 11)  According to records from TDOC, Plaintiff's security

classification before his first disciplinary conviction was "minimum restricted," and at

the time of Plaintiff's deposition on February 15, 2010 after his second disciplinary

conviction, his status was still "minimum restricted."  (Document No. 126 at 2)  Plaintiff

has never failed a drug test while incarcerated and has been able to provide a urine

sample for several drug tests upon receiving advance notice of the tests.  (Document No.

1 at 9)

    Plaintiff was transferred to Wayne County Annex prison facility on March 19,

2008.  (Document No. 126 at 3)  Plaintiff was employed at the fuel station at Wayne

County Annex for three weeks before accepting a position as an inmate legal clerk.  *Id.*

Plaintiff stated that he was qualified to be an inmate legal clerk at Wayne County Annex

and is still presently qualified to be an inmate legal clerk.  *Id.*

    On August 29, 2008, Plaintiff was transferred to South Central Correctional

Facility.  *Id.*  He is presently qualified to work as an inmate legal clerk, and there is

nothing to prevent him from being employed as an inmate legal clerk when the position

becomes available.  *Id.*  However, Plaintiff refuses to apply for a position as an inmate

legal clerk and complains that the prison administration will not allow inmates to help

each other at the legal library.  *Id.* at 4.

4

IV. Conclusions of Law

A. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosures on file, and any affidavit show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp v. Cattrett*, 477 U.S. 317 (1986). In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order to withstand summary judgment, the nonmoving party "may not rest on its pleadings, but must come forward with [admissible] evidence from which a rational trier of fact could find in its favor. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999).

B. Analysis

Plaintiff seeks injunctive relief under § 12132 of the ADA, which provides the following protections:

> "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. Plaintiff originally alleged that TDOC denied him lower security classification, the right to work as a legal clerk, participation in the Arts & Crafts program, visitation rights with his immediate family, and the ability to purchase packages

5

as a result of disciplinary convictions stemming from his alleged inability to give a urine sample. (Docket Entry No. 1 at 9) Subsequently, Plaintiff informed the court that of these five alleged instances of violations of his rights, he was continuing to seek injunctive relief only to prohibit TDOC from denying him the opportunity to work as an inmate law clerk and from altering his security classification. (Docket Entry No. 144 at 4) Plaintiff argues that by allegedly denying him the opportunity to work as an inmate law clerk and changing his security status, TDOC unfairly discriminated against him on the basis of his alleged disability in violation of the ADA.

To state an ADA claim, a plaintiff must allege facts to support that he: (1) has a disability; (2) that he is otherwise qualified; and that [prison officials'] actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap. *Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir.1996). In addition, a plaintiff must demonstrate that a defendant's violation of the ADA resulted in actual injury to the plaintiff before he or she can recover. *Morant v. Vaughn*, 2009 WL 6651941, at *3 (E.D. Va. Jan. 8, 2009). Furthermore, a violation of the ADA alone does not establish that the plaintiff suffered an actual injury. *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir.1999). A plaintiff must provide evidence of specific facts demonstrating that the Plaintiff has suffered actual injury to establish standing at the summary judgment stage. *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005).

As stated above, the undisputed facts indicate that Defendant's alleged ADA violations have not resulted in any ongoing injury as to Plaintiff's security status or as to

6

his ability to work as an inmate law clerk. Plaintiff acknowledges that his security classification has returned to minium restricted, the same classification he possessed before his disciplinary convictions for refusing drug screening. (Docket Entry No. 144 at 2) Furthermore, Plaintiff admits that although he is qualified to work as an inmate legal clerk, he refuses to apply for the position. (Docket Entry No. 125 at 16) As a result, Plaintiff's two remaining claims for specific injuries under the ADA no longer demonstrate the requisite harm resulting from Defendant's conduct. Accordingly, summary judgment for Defendants as to the Plaintiff's claim for injunctive relief relating to his security classification and eligibility for employment as an inmate law clerk is appropriate at this time. *See Lueckel*, 417 F.3d at 540; *Morant*, 2009 WL 6651941, at *4.

However, Plaintiff continues to face the root cause of the particular harms he has suffered in the past: he reasonably expects that because his medical condition inhibits his ability to take a drug test under normal conditions, he will likely be subjected to future sanctions stemming from a disciplinary conviction for refusing a drug screening. (Docket Entry No. 144 at 4) Plaintiff does not have to wait until he is punished again for failing to take a drug test before making a claim of discrimination under the ADA; a significant possibility of future harm is sufficient to justify an injunction to prevent the possibility of prospective harm. *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). Accordingly, Plaintiff can seek an order enjoining the TDOC medical staff from refusing Plaintiff psychological medical care as directed in the memorandum from Kevin Rea ("Rea") on the grounds that it is related to inmate drug

7

testing. Under TDOC policy 506.21, an official diagnosis of Plaintiff's disabling condition from prison medical staff is necessary for Plaintiff to qualify for a specially accommodation during drug testing, specifically, the use of a "dry room."[2]

As mentioned above, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such [public] entity." 42 U.S.C. § 12132. Public entities have an affirmative obligation to accommodate disabled individuals under Title II. *Popovich v. Cuyahoga County Ct. of Com. Pl.*, 227 F.3d 627, 638 (6th Cir. 2000). State prisons and prison services qualify as public entities under Title II. *Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998). Moreover, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in.')" *Id.* at 210 (quoting *Block v. Rutherford*, 468 U.S. 576, 580 (1984)).

Plaintiff has submitted documentation from a prison physician stating that his paruresis limits his bladder function such that it may require several hours for him to produce a urine sample. (Docket Entry No. 1-1 at 11) Paruresis appears to be a legitimate, recognized social anxiety disorder. *See* STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000). Plaintiff's alleged paruresis likely constitutes a disability under the ADA because it is a mental impairment which "substantially limits" one of Plaintiff's

---

[2]http://www.tennessee.gov/correction/pdf/506-21.pdf

"major bodily functions." *Melman v. Metro. Gov't of Nashville and Davidson County*, 2009 WL 2027120, at \*3 (M.D. Tenn. July 9, 2009) (citing 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102). A condition is substantially limiting when it significantly restricts a "major life activity" that a person in the general population could perform without significant restriction. *Lanman v. Johnson County,* 393 F.3d 1151, 1157 (10th Cir. 2004). Bladder function is specifically noted as a major bodily function under the ADA. 42 U.S.C. § 12102(2)(B).

TDOC policy 506.21 allows the prison Warden to place an inmate who has difficulty voiding during a drug test in a "dry room" until a urine sample is obtained. Policy 506.21 recognizes that "[t]here may be extenuating medical (e.g., dehydration, kidney problems, medication, etc.) and psychological (e.g. social phobias) conditions that may preclude the giving of a sample" and that "[i]n such cases, the inmate must provide written evidence from the health care staff indicating such a condition." In the instant case, a prison physician has previously indicated that Plaintiff may require several hours to give a urine sample as a result of his paruresis and would benefit from the use of a "dry cell" (Docket Entry No. 1-1 at 11). Indeed, Plaintiff has requested TDOC allow him to use a "dry cell" during drug testing because of his disability (Docket Entry No. 1 at 11). In proceedings concerning the latest disciplinary charge against Plaintiff, TDOC officials have chosen to ignore the prison physician's paruresis diagnosis. (Docket Entry No. 1 at 14) TDOC officials have upheld Plaintiff's disciplinary convictions despite the physician's assertion that Plaintiff needs a "dry room" on the grounds that the physician's diagnosis was made after the Plaintiff was twice convicted for refusing a drug screening.

9

*Id.*  Going forward, it is not clear that the AVO, issued in 2006 when Plaintiff was

incarcerated at Turney Center Industrial Prison, has traveled with him to other TDOC

facilities or that it will be recognized as trumping TDOC's admonition, memorialized in

Rea's 2002 memorandum to Turney Center medical staff, that such staff are prohibited

from being involved in any way, shape or form with drug testing, and that existing

AVO's involving such matters are of no effect.  (Docket Entry No. 1-1 at 18)  As a result,

Plaintiff is legitimately concerned that he will be unable to obtain a recognized paruresis

diagnosis from prison medical staff because diagnosing his paruresis and its implications

would necessarily concern inmate drug testing and that he will thus be exposed to future

disciplinary charges on account of his disability.

Based on the record as it currently stands,  Plaintiff has asserted facts sufficient to

state a claim for an injunction under Title II of the ADA because he has demonstrated a

documented diagnosis of his alleged disability and has offered specific facts to support

the allegation that he will be subjected to discrimination by TDOC on the basis of his

mental disorder as a result of TDOC's policy of preventing inmates from receiving

psychological evaluations from prison medical staff in order to qualify for a special

accommodation during inmate drug testing.  Because it appears likely that Plaintiff will

encounter a future situation in which he will be required to give a urine sample for an

inmate drug screen, his request for injunctive relief preventing TDOC from enforcing its

policy prohibiting prison medical staff from officially diagnosing Plaintiff's disorder

because it may implicate drug testing remains viable, although his other remaining

grounds for injunctive relief do not.  At this stage of the proceedings, genuine issues of

10

material fact exist as to whether TDOC policies at issue here will continue to disparately impact Plaintiff on account of his paruresis, resulting in the denial of medical services and other discriminatory effects.

## V. Recommendation

In light of the foregoing, the Magistrate Judge recommends that Defendant's motion for summary judgment be GRANTED in part and DENIED in part. Specifically, to the extent that Plaintiff seeks injunctive relief based upon his security classification and eligibility to work as an inmate law clerk, Defendant's motion for summary judgment should be granted and the complaint dismissed. However, to the extent that Plaintiff seeks injunctive relief preventing TDOC from subjecting Plaintiff to disciplinary charges while enforcing its policy prohibiting prison medical staff from diagnosing Plaintiff's disorder because it may implicate inmate drug testing, Defendant's motion for summary judgment should be denied.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 470 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

Case 1:07-cv-00013   Document 220   Filed 08/02/10   Page 11 of 12 PageID #: 898

**ENTERED** this 2nd day of August 2010.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE